## AFFIDAVIT OF SPECIAL AGENT DANA FIANDACA

I, Dana Fiandaca, having been duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with the United States Immigration and Customs Enforcement ("ICE"), formerly the United States Immigration and Naturalization Service ("INS"), and have been so employed since June 1996. Among other duties, I am assigned to investigate the manufacture and sale of fraudulent Resident Alien Cards, Form I-551 (hereinafter "green cards"). From my training, I know that persons, usually aliens, manufacture and distribute counterfeit green cards and social security account number cards ("SSANC") and other false identification documentation. The counterfeit documents are then distributed and sold to aliens who are illegally in the United States. I am familiar with the various criminal statutes which make it unlawful to manufacture and sell green cards, including Title 18, United States Code, Section 1028(a)(1)-(6) (producing identification and false identification documents); and Title 18, United States Code, Section 1426(b) (using and selling false naturalization, citizenship and registry documents).

2. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and agents of ICE, as well as information provided to me by a

Confidential Source ("CS"). This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation, but is submitted in support of a application for (1) a criminal complaint against Romano CANDIDO a/k/a "Romano" ("CANDIDO"), charging him with violating Title 18 U.S.C. Section 1028(a)(2) (transferring fraudulent documents) and 18 U.S.C. Section 1426(b)(false alien registration documents) and (2) a search warrant for the following premises: Apartment 102, located in the "Old English Village" apartment complex at 237 Eighteenth Street in Dracut, Massachusetts.

### DESCRIPTION OF PREMISES TO BE SEARCHED:

3.   237 Eighteenth Street is located in the "Old English Village" Apartment complex located in Dracut, Massachusetts. It is described as a is a multi-level, multi-unit reddish-brown bricked apartment building having light colored tan vinyl siding underneath the windows and peak portion of the roof. Although building #237 is joined with building #235, there are separate entrances, which are clearly marked with the respective numbers on the outside glass doors. Apartment #102 is located within 237 Eighteenth Street. Located within the main entrance vestibule area of building #237, is a bank of mailboxes with tenant names

on them. However, there was no name present on the mailbox for apartment #102. Upon entry via the main entrance, there is a set of stairs leading up and another set of stairs leading down to the basement level. Apartment #102 can be accessed by proceeding down the set of stairs to the basement level. The door to apartment #102 is the first door on the left at the bottom of the stairs. The door for apartment #102 is clearly marked with the respective number affixed to it.

    4.   I seek a search warrant for the above-described residence because I have probable cause to believe that there are presently located within the residence, physical and documentary evidence, including, but not limited to, computers, computer systems, color copier, blank and or typewritten counterfeit green cards, blank or typewritten counterfeit social security account number cards, and other blank identification documents, typewriters, typewriter ribbons and/or cartridges, plastic laminators, plastic laminate, paper cutters, scissors, glue, ink pads, notebooks, journals, address books, customer lists and/or records listing names, dates, numbers, cash payments, cash, and other pertinent equipment and documents pertaining to the possession, production and transfer of counterfeit identification documents, which are the fruits, instrumentalities and evidence

of crimes in violation of 18 U.S.C. Section 1028(a)(1) and 18 U.S.C. Section 1426(b).

***BACKGROUND:***

5. On January 26, 2004, I received information from confidential source SA-576-BO (hereinafter "CS#1") regarding a male named "Romano" Last Name Unknown, subsequently identified as Romano CANDIDO, who was allegedly involved in the sale of counterfeit green cards and social security cards in the Lowell, Massachusetts area. CS#1 provided your affiant with a cellular number of (978) 729-0737 as the way to contact CANDIDO for the documents.

6. On February 3, 2004, a different confidential source SA-566-BO (hereinafter "CS#2"), placed a consensually monitored and recorded call to CANDIDO at (978) 729-0737 to inquire about obtaining fraudulent green cards and social security cards. According to CS#2, he/she made contact with a male who claimed to be CANDIDO. During the conversation, CANDIDO advised CS#2 that he could assist him/her in obtaining the aforementioned documents for $120.00 a set (a set includes one green card and one social security card). CANDIDO informed CS#2 that he was only the middle person (or courier of the documents), and that the actual manufacturer of the documents was away, but would be back soon.

4

CANDIDO instructed CS#2 to call back on a subsequent date, by which the manufacturer should have returned. CS#2 agreed, and terminated the call.

7. Subsequent telephone record checks of the target cellular number -- (978) 729-0737 -- revealed that the current subscriber for phone service is CANDIDO. According to phone records, CANDIDO provided an address of 488 King Street in Littleton, Massachusetts.

### THE FIRST DOCUMENT PURCHASE:

8. On February 19, 2004, CS#2 placed a consensually monitored and recorded call to CANDIDO at the aforementioned cellular number to arrange the purchase of fraudulent documents. After making contact with CANDIDO, CS#2 inquired about obtaining two (2) sets of counterfeit green cards and social security cards. According to CS#2, CANDIDO agreed to accommodate the request. As a result of the call, a meeting was scheduled for 11:30 a.m. in the 99 Restaurant parking lot located on Industrial Avenue in Lowell, Massachusetts.

9. At approximately 10:45 a.m., ICE agents met with CS#2 in Lowell, Massachusetts to prepare for the scheduled meeting with CANDIDO. During the briefing, an integrity search of CS#2 and CS#2's vehicle was performed. Also, your affiant provided CS#2 with the two green card style photos, which were to be given

to CANDIDO and used on the documents. In addition, ICE agents affixed an electronic transmitter and recorder on CS#2 to monitor and record the meeting.

10. At approximately 11:05 a.m., ICE agents arrived in the vicinity of the 99 Restaurant and established stationary surveillance positions to await CANDIDO'S arrival.

11. At approximately 11:15 a.m., CS#2 was observed arriving in the 99 Restaurant parking lot, parking in a space and remaining in the vehicle.

12. At approximately 11:30 a.m., CANDIDO was observed arriving in the 99 Restaurant parking lot in a red Honda Civic, bearing Massachusetts Registration 95X N29 and parking next to CS#2's vehicle. Both CS#2 and CANDIDO remained in their own vehicles communicating through the open driver's side windows.

13. During the meeting, CS#2 handed CANDIDO the two (2) green card style photos with the names and dates of birth (contained in a white envelope). According to CS#2, CANDIDO removed the green card style photos and inspected them. CS#2 then inquired about the fee for the documents. CANDIDO replied that the price for each set was $160.00. Using a pretext, CS#2 was able to negotiate the price per set down to $120.00. _CANDIDO then advised CS#2 that the documents would be completed and ready for delivery within 30 to 40 minutes. Both CS#2 and CANDIDO

6

agreed to return to the 99 Restaurant to conduct the transfer of the completed documents. The meeting was then terminated at approximately 11:33 a.m. ICE agents activated a mobile surveillance on CANDIDO'S vehicle to document his activities.

14. ICE agents surveilled CANDIDO to the "Old English Village" Apartment complex located at 237 Eighteenth Street in Dracut, Massachusetts at approximately 11:50 a.m. He was observed exiting his vehicle and entering building #237, proceeding out of view.

15. At approximately 12:20 p.m., CS#2 received an unplanned call from CANDIDO, who stated that the documents were completed and ready for delivery. CS#2 agreed, and informed CANDIDO that he/she would meet CANDIDO in the 99 Restaurant parking lot. Approximately one minute later, CANDIDO was observed returning to his vehicle in the complex lot, and departing. ICE agents again activated a mobile surveillance to document his activities.

16. At approximately the same time, your affiant met with CS#2 to prepare for the document delivery. During the briefing, an integrity search of CS#2 and CS#2's vehicle was performed. In addition, CS#2 was provided with the $240.00 of official funds as the fee for the documents. Lastly, an electronic transmitter and recorder were placed on CS#2 to monitor and record the meeting. Your affiant then escorted CS#2 to the 99 Restaurant parking lot

7

to await CANDIDO'S arrival. CS#2 remained in his/her vehicle in a parking space.

17. ICE agents surveilled CANDIDO from 237 Eighteenth Street, directly back to the 99 Restaurant parking lot, where he arrived at approximately 12:38 p.m. During the course of the surveillance, CANDIDO was not observed making any stops along the way. CANDIDO entered the parking lot, and parked his vehicle. He then exited his vehicle and proceeded on foot to CS#2's vehicle, stopping at the driver's side opened window.

18. According to CS#2, CANDIDO handed him/her the two (2) sets of completed fraudulent green cards and social security cards, which were contained in a white envelope. In exchange, CS#2 handed CANDIDO the $240.00 of official funds as the fee for the documents. After a brief verbal exchange, CANDIDO advised CS#2 that he/she could call him for future document orders. The meeting was then terminated at approximately 12:41 p.m.

19. Shortly after the meet terminated, your affiant met with CS#2 for debriefing and to obtain custody of the documents. Upon inspection of the documents, I determined that the photos on the green cards, were the same photos I provided CS#2. Subsequent ICE record checks revealed that all of the Alien Registration Numbers which appeared on the green cards provided by CANDIDO are either invalid or assigned to other persons.

20. During this investigation, your affiant was able to obtain a photo image of Romano CANDIDO'S Massachusetts Driver's License (#S45608168), which I showed to CS#2 after the conclusion of the meeting. CS#2 advised me that the person in the photo is the same person he/she knows as "Romano", and from whom he/she obtained the fraudulent documents.

***THE SECOND DOCUMENT PURCHASE:***

21. On March 2, 2004, CS#2 placed a consensually monitored and recorded call to CANDIDO at (978) 729-0737 to arrange the purchase of four (4) sets of fraudulent green cards and social security cards. According to CS#2, CANDIDO agreed to accommodate the document request, and informed CS#2 that the documents would be completed in a short period, after the order is placed. Based on the call, a meeting was scheduled for March 3, 2004 at approximately 10:00 a.m. in the 99 Restaurant parking lot located on Industrial Avenue in Lowell, Massachusetts. CANDIDO advised CS#2 to call the following morning, once CS#2 had arrived in Lowell, Massachusetts. CS#2 agreed, and terminated the call.

22. On March 3, 2004, at approximately 9:10 a.m., ICE agents met with CS#2 in Lowell, Massachusetts to prepare for the scheduled meeting with CANDIDO. During the briefing, an integrity search of CS#2 and CS#2's vehicle was performed. Also, your affiant provided CS#2 with the four (4) green card style photos

9

along with the fictitious names and dates of birth, which were to be given to CANDIDO and used on the documents. In addition, ICE agents affixed an electronic transmitter and recorder on CS#2 to monitor and record the meeting. Lastly, CS#2 was provided with the $420.00 of official funds, which was to be given to CANDIDO as the fee for the documents.

23. At approximately 9:15 a.m., CS#2 placed a consensually monitored and recorded call to CANDIDO at the aforementioned number to confirm the meeting for 10:00 a.m. According to CS#2, CANDIDO agreed, and terminated the call.

24. At approximately 9:30 a.m., ICE agents arrived in the vicinity of the 99 Restaurant located on Industrial Avenue to await CANDIDO'S arrival.

25. At approximately 9:35 a.m., CS#2 was observed arriving in the 99 Restaurant lot, parking and remaining in the vehicle.

26. At approximately 10:08 a.m., CANDIDO was observed entering the 99 Restaurant lot operating a white Mitsubishi Eclipse (with black colored hood), bearing Massachusetts Registration 46A J17. A second vehicle was also observed entering the lot directly behind CANDIDO. The second vehicle, which was driven by an unknown Hispanic male, is described as a green Pontiac Sunfire, bearing Massachusetts Registration 83B Y38. Both vehicles then parked next to CS#2's vehicle. CANDIDO and the

unknown male exited the vehicles and proceeded to CS#2's vehicle and stopped at the open driver's side window.

27. According to CS#2, CANDIDO introduced the unknown male as a "friend". During the meeting, CS#2 handed CANDIDO the four (4) green card style photos with the names and dates of birth. CANDIDO advised CS#2 that the documents would be completed and ready for delivery within 30 to 45 minutes. CANDIDO then requested that CS#2 provide him with a deposit for the documents. As a result, CS#2 provided CANDIDO with $220.00 of the official funds. CS#2 agreed, and terminated the meeting at approximately 10:11 am. CANDIDO was observed switching vehicles with the unknown male, and entering the green Sunfire. ICE agents activated a mobile surveillance on CANDIDO to document his activities.

28. ICE agents surveilled CANDIDO back to 237 Eighteenth Street in Dracut, Massachusetts, where he arrived at approximately 10:30 a.m. S/A Gus DaCunha, who was in position outside of 237 Eighteenth Street, acting in an undercover capacity, observed CANDIDO approach the front door of building # 237 and enter the vestibule area. S/A DaCunha followed CANDIDO into the vestibule area and engaged in a brief conversation with him. Using a pretext, S/A DaCunha inquired to CANDIDO if he resided in the building, and what his name was. CANDIDO replied

11

that his name was "Romano", and that he did not reside in the building, but that his cousin did. While waiting in the vestibule area, S/A DaCunha observed CANDIDO push the door buzzer for apartment #102. After several seconds, an unknown Hispanic male emerged from inside the building and opened the front door for CANDIDO. After entering, S/A DaCunha observed both CANDIDO and the unknown Hispanic male enter apartment #102 and close the door at approximately 10:33 a.m. Not wanting to arouse suspicion, S/A DaCunha exited the building, and returned to his vehicle, departing the complex lot.

29. At approximately 11:34 a.m., CS#2 placed a consensually monitored and recorded call to CANDIDO to check on the status of the documents. According to CS#2, CANDIDO advised him/her that he was on his way. The call was then terminated.

30. At approximately the same time, your affiant met with CS#2 to prepare for the document delivery. During the briefing, an integrity search of CS#2 and CS#2's vehicle was performed. In addition, your affiant verified that CS#2 was still in possession of the remaining $200.00 of official funds, which was to be given to CANDIDO as the balance of the fee for the documents. Lastly, an electronic transmitter and recorder were placed on CS#2 to monitor and record the meeting. Your affiant then escorted CS#2 to the 99 Restaurant parking lot to await CANDIDO'S arrival. CS#2

entered the parking lot at approximately 11:39 a.m. and remained in his/her vehicle in a parking space.

31.  At approximately 11:40 a.m., ICE agents observed CANDIDO exit the parking lot to 237 Eighteenth Street operating the green Pontiac Sunfire, and proceeded down the street. Agents activated a mobile surveillance on CANDIDO to document his activities.

32.  ICE agents surveilled CANDIDO from 237 Eighteenth Street, directly back to the 99 Restaurant parking lot, where he arrived at approximately 11:56 a.m.  During the course of the surveillance, CANDIDO was not observed making any stops along the way. CANDIDO entered the parking lot, and parked his vehicle. He then exited the vehicle and proceeded on foot to CS#2's vehicle, stopping at the driver's side opened window (proceeding out of view).

33.  According to CS#2, during the meeting, CANDIDO provided him/her with the four (4) completed sets of fraudulent green cards and social security cards (contained in a white envelope). In exchange, CS#2 provided CANDIDO with the remaining fee of $200.00. During the course of the conversation, CANDIDO informed CS#2 that he is involved in the document making business with another person. After a brief exchange, the meeting was terminated at approximately 11:59 a.m.

34. Shortly after the meet terminated, your affiant met with CS#2 for debriefing and to obtain custody of the documents. Upon inspection of the documents, I determined that the photos on the green cards, were the same photos I provided CS#2. Subsequent ICE record checks revealed that all of the Alien Registration Numbers which appeared on the green cards provided by CANDIDO are either invalid or assigned to other persons.

35. In sum, I have a total of twelve documents from the above-mentioned undercover purchases. I have reviewed the documents and have determined that they are counterfeit identification documents. A review of records of the ICE and the Social Security Administration reveals that the green card and SSANC numbers are either invalid, or belong to an individual other than the person listed on the documents.

36. Furthermore, I have reviewed all of the documents purchased during the undercover purchases, and based on my experience, they appear to have been produced by a computer. The fonts, which appear on both the fraudulent green cards and social security cards, are characteristic of a computer printer. The fonts appear smooth and lack the indentation characteristics common to a typewriter.

*CONCLUSION: SEARCH WARRANT*

*ITEMS TO BE SEIZED:*

37.  Based on my experience in this and other fraudulent document investigations, I am familiar with the tools, equipment and materials necessary for the manufacture of counterfeit green cards and social security cards. I am aware that the common types of tools, equipment and materials used in the manufacturing of said documents are a computer, computer printer, computer document scanner, color copier, type writer, plastic laminate, a sealing mechanism, ink pads, blank alien registration cards and blank social security cards.

38.  For the purpose of this affidavit, the term "computer" refers to the box that houses the central processing unit ("CPU") along with any internal storage devices such as internal hard drives and internal communication devices (such as internal modems capable of sending/receiving electronic mail or FAX cards, along with any other hardware, software, and data contained in the main unit. Printers, external modems (attached by cable to the main unit), monitors, scanners and other external attachments will be referred to collectively as peripherals. When the computer and all peripheral are referred to as one package, the term "computer system" is used. Information refers to all the

information on a computer system, including both software and applications and data.

39.  Based upon the foregoing, I believe that there is probable cause to believe that the physical and documentary evidence, including, but not limited to, computers, computer systems, blank and/or typewritten counterfeit green cards, blank and/or typewritten social security account number cards, blank international drivers licenses and any other blank identification documents, type writers, typewriter ribbons and/or cartridges, plastic laminators, plastic laminate, paper cutters, scissors, glue, inkpads, notebooks, journals, address books, customer lists and /or records listing names, dates, numbers, cash payments, cash and other pertinent equipment and documents pertaining to the possession, production and transfer of counterfeit identification documents, which are the fruits, instrumentalities and evidence of crimes in violation of 18 U.S.C. Section 1028(a)(1) through (a)(6) and 18 U.S.C. Section 1426(b) can be located at the premises described as Apartment #102 in the "Old English Village" apartment complex located at 237 Eighteenth Street in Dracut, Massachusetts.

*CONCLUSION: CRIMINAL COMPLAINT*

40. Based on the foregoing, information, I believe probable cause exists to conclude that Romano CANDIDO a/k/a "Romano" ("CANDIDO"), on February 19, 2004 and again on March 3, 2004, did, knowingly and without lawful authority, transfer false identification documents, in violation of Title 18 U.S.C., Section 1028(a)(2), and did use and sell, as true and genuine, false and forged documentary evidence required or authorized by law relating to the registry of aliens in false naturalization, citizenship and registry documents in violation of 18 U.S.C. Section 1426(b).

_____
Dana Fiandaca
Special Agent
United States Bureau of Immigration
and Customs Enforcement


Subscribed and sworn before me
this 12th day of March, 2004.

_____
JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE

17